**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Louis Roman, | Case No. **17 CV 07898** |
| Plaintiff, | |
| -against- | CIVIL COMPLAINT<br>FOR DECLARATORY JUDGMENT<br>AND RELIEF |
| BNY Western Trust, The BANK of NEW YORK TRUST, Ben Staskiewicz Esq., Brian D. Rich Esq., "John Does" and "Jane Roes", 1 through 100, et. al. | PURSUANT TO 28 U.S.C §§ 2201, 2202 & & FRCP RULE 57 |
| | JURY TRIAL DEMANDED |
| Defendant(s). | **JUDGE PAULEY** |

### JURISDICTION

1. The above named Plaintiff hereby invokes the jurisdiction and venue of this Court for Declaratory Judgment and Relief for declaration of rights and the creation of a remedy pursuant to 28 U.S.C. §§ 2201, 2202 & & FRCP Rule 57 once the Court finds that the Defendant(s), and each of them, violated the Defendant(s) Constitutional Rights under the 14th Amendment, The False Claims Act, The Fair Debt Collections Practice Act, The Truth in Lending Act, the laws governing The Securities Exchange Commission under Title 15 of the United States Code, the Uniform Commercial Code, The National Stolen Properties Act, U.S.C. Title 18 Rule 241 & Rule 242 Conspiracy Under The Color Of Law, Title 18 U.S.C. §§ 1312, 2311 and the offense are codified at 18 U.S.C. §§ 2314-2315 as well as Title 18 Rule 471-474, "Counterfeiting of a financial instrument."

2. This Court also has justifiable jurisdiction under the Supplemental Jurisdiction provision of 28 U.S.C § 1367.

3. This Court has both personal and subject matter jurisdiction to hear this case pursuant and to § 1331 of Title 28 as a federal question of the rights of the parties.

## VENUE

4. Venue lies in this District pursuant to Title 28 U.S.C § 1367 pertaining to Supplemental Jurisdiction for reasons of the fact that the subject matter of this justiciable controversy is governed by the New York Consolidated Laws, Estates, Powers and Trusts, and the primary Defendant is ensconced in a Pooling and Servicing Agreement Portfolio on Wall Street.

## PARTIES

4. Defendant, BNY WESTERN TRUST, is a non-existent entity that is purportedly doing business at 700 South Flower Street, Suite 200, Los Angeles, CA 90017.
5. Defendant, BANK of NEW YORK TRUST, is another non-existent entity that is purportedly doing business at 225 Liberty Street, New York, N.Y. 10286.
6. Defendant, Ben Staskiewicz, Esq., is a Debt Collector Agent who is doing business for and with a Debt Collector Law Firm formerly known as HUNT LEIBERT & JACOBSON, P.C., that is currently doing business as MCALLA RAYMER LEIBERT PIERCE, LLC, whose principle place of business is located at 50 Weston Street, Hartford, CT 06120.
7. Defendant, Brian D. Rich Esq., is a Debt Collector Agent who is doing business for and with a Debt Collector Law Firm known as HALLORAN & SAGE, LLP, whose principle place of business is 315 Post Road West, Westport, CT, 06880.
8. Defendant(s), "John Does" and "Jane Roes", 1 through 100, are fictitious persons who will be identified through discovery.

## STATEMENT OF FACTS

9. On or about November 24, 1998, the Plaintiff created a signed Mortgage and Note with Northeast Mortgage who is no longer in business, but did if fact materially alter

the substance and intent of the purported Mortgage transaction, from an Article 3 Negotiable Instrument governed under the U.C.C., into an U.C.C. Article 8 Investment Security, and somehow the purported Defendant, BNY WESTERN TRUST, claims to have obtained Plaintiff's Security Instruments from Northeast Mortgage without a valid verifiable proof of Assignment.

10. On July 12, 2016, Plaintiff, Louis Anthony Roman, residing at 631 Fairview Ave., Bridgeport 06606 filed a voluntary petition for relief under Chapter 13 of The U.S. Bankruptcy Code, Case No. 16-50924.

11. On or about December 2016, Defendant BNY WESTERN TRUST and Defendant The BANK of NEW YORK Trustee claims to have the title to my home when in fact, these **two Non-Existing companies**, made claim against Plaintiff's Estate for the Bank of New York without filing a Proof of Claim, and entered into the court numerous new parties such as Washington Mutual has not existed since 2008.

12. In addition, said Defendant(s) who are Debt Collector Agents, filed as purported Assignments in Plaintiff's Bankruptcy case, from Northeast Mortgage, that was closed by the State of Connecticut Banking Commissioner for committing 200 counts of Mortgage Fraud.

13. Northeast Mortgage, as the last entity to have any valid claim in Plaintiff's property, could not assign its interests without giving Plaintiff Notice, and the claims and representations made by the attorneys for BNY Western Trust and the Bank of New York Trustee stating that they had a note and mortgage are questionable.

14. In fact their claims were without basis as they have never had standing and were never required to provide a valid chain of title.

15. To reiterate, neither of the Defendant(s) BNY WESTERN TRUST or the BANK of NEW YORK TRUST exist in the state of Kentucky or anywhere else. This is the same as using a dead person's name to sign a legal contract. In fact this is a counterfeit under Title 18 U.S.C. 471-478.

16. Before Plaintiff discovered the fact that Defendant(s) BNY WESTERN TRUST and the BANK OF NEW YORK TRUST did not exist, Plaintiff has documented incontrovertible proof of an attempt to pay off the purported note and mortgage in full on two occasions, once in 2006 while in a Chapter 13 Bankruptcy in the form of Certified Funds to their Bankruptcy attorney and again in 2008 with Certified Bank Funds and the payoff in full was refused by Defendant(s) on both occasions.

17. "The equity of redemption gives the mortgagor the right to redeem the legal title previously conveyed by performing whatever conditions are specified in the mortgage, the most important of which is usually the payment of money." (*New Milford Savings Bank* v *Jajer*, 44 Conn. App. 588, 593, 691 A.2d 598, 601 (1997).

## CAUSES OF ACTION

### COUNT I

### FRAUD IN THE FACTUM

18. Plaintiff incorporates the facts and law stipulated in paragraphs 1 through 17 as though specified herein to allege that the purported Original Lender, Northeast Mortgage materially altered the Plaintiff's Security Instruments from its intended substance as a Mortgage and Note into an Investment Instrument Portfolio for Investors on Wall Street, and that the Defendant(s), and each of them, further

facilitated the perpetration of that fraud in the factum of those Instruments without Plaintiff's knowledge and consent.

19. It is unlawful to securitize an instrument (Note/Mortgage) without the signer of the instrument being given notice of the securitization.

20. Defendant(s), and each of them, knew or should have reasonably known that their acts of conspiracy and in collusion to omit, avoid or falsify the disclosure of documents and information required by law to be submitted were in violation of TILA, FDCPA, and clearly established precedent case laws.

21. As a direct and proximate result of the Defendant(s) perpetration and perpetuation of the Fraud in the Factum, Plaintiff has suffered significant damages emotionally, physically and financially, and respectfully seeks compensation upon proof for those damages.

22. Plaintiff respectfully requests the Court give a judicial determination of the violations expressed within the facts of this Civil Complaint by declaratory judgment in accordance with the law, and to create a remedy under the FRCP Rule 57.

## COUNT II

### FRAUDULENT CONVERSION

23. Plaintiff incorporates the facts and law stipulated in paragraphs 1 through 22 as though specified herein to allege that the Defendant(s), and each of them, perpetrated and perpetuated the Fraudulent Conversion of the Security Instruments attributed to the property interests of Plaintiff.

24. Fraudulent conversion is the unlawful and wrongful exercise of dominion, ownership or control over the property of another to the exclusion of the exercise of the same

Rights by the Owner, either permanently, or for an indefinite time. (Pugh v. Hassell, 1952, 206 Okla. 290, 291).

25. As a direct and proximate result of the Defendant(s) perpetration and perpetuation of the unfair business practices, Plaintiff has suffered significant damages emotionally, physically and financially, and respectfully seeks compensation upon proof for those damages.

26. Plaintiff respectfully requests the Court give a judicial determination of the violations expressed within the facts of this Civil Complaint by declaratory judgment in accordance with the law, and to create a remedy under the FRCP Rule 57.

## COUNT III

## NON-EXISTENT PARTY

27. Plaintiff incorporates the facts and law stipulated in paragraphs 1 through 26 as though specified herein to allege that the Defendant(s), that the Defendant(s) BNY WESTERN BANK, and BANK OF NEW YORK TRUSTEE, did not exist as a lawful entity to do business and contract with Plaintiff as a matter of law.

28. Pursuant Connecticut Practice Book § 32-3:5, "Unlicensed Lender", a non-depository first and second mortgage lender are required to be licensed in Connecticut." (See Connecticut General Statutes 36(a)-488).

29. As a direct and proximate result of the Defendant(s) perpetration and perpetuation of the unfair business practices, Plaintiff has suffered significant damages emotionally, physically and financially, and respectfully seeks compensation upon proof for those damages.

30. Plaintiff respectfully requests the Court give a judicial determination of the violations expressed within the facts of this Civil Complaint by declaratory judgment in accordance with the law, and to create a remedy under the FRCP Rule 57.

## **VIOLATIONS OF THE FDCPA, TILA, SEC, UCC AND THE FTCA**

31. Plaintiff incorporates the facts and law stipulated in paragraphs 1 through 20 as though specified herein to allege that the Defendant(s), and each of them, perpetrated and perpetuated unfair business practices and under this Section of the FTCA, among other clearly established law, a Deceptive Practice is an act or practice where a representation, omission or practice misleads or is likely to mislead the consumer; a consumer's interpretation of the representation, omission or practice is considered reasonable under the circumstances, and the misleading representation, omission or practice is material.

32. Plaintiff believed he was engaged in a contractual fiduciary relationship with the Original Lender, Northeast Mortgage, for an Article 3 of the U.C.C. Negotiable Instrument, when the Original Lender in fact, intended to materially alter that contractual relationship into an Article 8 of the U.C.C. Investment Security arrangement, which the Plaintiff was not informed of, nor did the Plaintiff give any consent to be a Party to such an agreement.

33. Defendant(s), and each of them, knew or should have reasonably known, that Plaintiff is not a Party to the Investment Security Agreement that the Original Lender unconscionably securitized the negotiable instruments which Plaintiff created, and that Plaintiff is not obligated to such an undisclosed contractual agreement.

34. As a direct and proximate result of the Defendant(s) perpetration and perpetuation of the unfair business practices, Plaintiff has suffered significant damages emotionally, physically and financially, and respectfully seeks compensation upon proof for those damages.

35. Plaintiff respectfully requests the Court give a judicial determination of the violations expressed within the facts of this Civil Complaint by declaratory judgment in accordance with the law, and to create a remedy under the FRCP Rule 57.

## THE COURT'S POWER TO GRANT RELIEF

36. Pursuant to Section 13(b) of the Fair Trade Commission's Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress the violations of any provisions of law enforced by the FTC, SEC, and UCC. The Court in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC, SEC and UCC.

37. Section 19 of the FTC Act, 15 U.S.C. § 57(b), authorizes this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from the Defendant(s) violations of law governing trade practices, including the rescission or reformation of contracts and the refund of money.

Date: October 13, 2017.
  State of Connecticut, County of Fairfield.

                       Respectfully,

                       Louis Roman

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Louis Roman, | Case No._____(____) |
| Plaintiff, | **AFFIDAVIT** |
| -against- | OF LOUIS ROMAN |
| | IN SUPPORT OF |
| BNY Western Trust, The BANK of NEW YORK TRUST, Ben Staskiewicz Esq., Brian D. Rich Esq., "John Does" and "Jane Roes", 1 through 100, et. al. | CIVIL COMPLAINT FOR DECLARATORY JUDGMENT AND RELIEF PURSUANT TO 28 U.S.C §§ 2201, 2202 & & FRCP RULE 57 |
| Defendant(s). | JURY TRIAL DEMANDED |

**VERIFICATION**

STATE OF CONNECTICUT    }
                        }ss:
COUNTY OF FAIRFIELD     }

I, Louis Roman, hereby verify that the following statements made herein are done under penalty of perjury of the laws of the United States of America per 28 U.S.C. § 1746:

I, Louis Roman, have personal firsthand knowledge of the foregoing statements in the Declaratory Judgment Civil Complaint I have duly filed in the Southern District of New York. I affirm that those statements therein are true and correct to the best of my knowledge and as to those statements for which I have no personal knowledge, I believe them to be true.

Date: October 13, 2017

Respectfully,

_____
Louis Roman

Sworn to Before Me This
_13_ day of October, 2017.

_____
        Notary

My Commission Expires 9/19/2020

## CERTIFICATE OF SERVICE

I, Louis Roman, Plaintiff *Pro Se*, hereby certify that a copy of the foregoing Declaratory Judgment Civil Complaint was duly served by U.S. Mail first class postage prepaid, fax and or email pursuant to Rules 2002, 9013 and 9014 of the Federal Rules on October 13, 2017 to the following parties.

MCALLA RAYMER LEIBERT PIERCE, LLC,
Ben Staskiewicz Esq.
50 Weston Street
Hartford, CT 06120

HALLORAN & SAGE, LLP
Brian D. Rich Esq.
225 Asylum Street
Hartford, CT 06103

BNY WESTERN TRUST
700 South Flower Street, Suite 200
Los Angeles, CA 90017.

BANK of NEW YORK TRUST
225 Liberty Street
New York, N.Y. 10286.

Louis. Roman, Plaintiff
*Pro Se*

# 15 -YEAR BATTLE: CONNECTICUT HOMEOWNER CLAIMS BANK OF NEW YORK WANTS TO "STEAL" HOME THROUGH "FRAUDULENT" FORECLOSURE

**MILTON ALLIMADI** SEPTEMBER 21, 2015



A*A

*Roman standing in front of the home BNY has been fighting for since 2000*

**[Black Star News Investigative Report]**

After holding off the Bank of New York for 15 years Louis Roman, a Connecticut homeowner, claims the giant corporation could "fraudulently" foreclose on the house he's lived in for 47 years, tomorrow.

The bank filed a lawsuit seeking to foreclose in 2000 and won a summary judgment. Somehow Roman, who owns the home in Bridgeport that he bought with his then wife Diane, has managed to hold off the bank, representing himself through most of the years, by filing extensions on the foreclosure dates, appeals, counterclaims and bankruptcies.

The bank eventually won a judgment for a strict foreclosure with a law date of September 22.

"How can Bank of New York foreclose when they don't own the note and mortgage on the property," Roman, a former banker himself who says he earned an MBA from Harvard, says. "I've been demanding for a trial for years so I can introduce the evidence of fraud but no judge in Connecticut wants to give me my day in court. The bank wants to steal my home through a favorable ruling on a motion, from the judges."

"These aren't just my words, I have documentation to back it all up," Roman adds.

In recent years there have been reports of massive fraud against homeowners by major banks including BNY; in one case the bank reportedly filed foreclosure proceeding on a property three months before it had even been assiged the note and mortgage.

Roman says a Connecticut Superior Court Judge granted BNY strict foreclosure even after the IRS placed a federal tax lien on the property.

The whole saga started when Bank of New York, through its attorneys Hartford, CT-based Hunt Liebert Chester & Jacobson, P.C. (now Hunt Liebert Jacobson, in Hartford CT) filed the lawsuit on October 16, 2000 to foreclose on the property listed in Diane Roman's name.

In the complaint, signed by Richard Liebert, a partner in the law firm, and in other court documents here's how the Bank of New York claims it was assigned the note and mortgage.

On November 24, 1998 Diane Roman executed a mortgage with Northeast Mortgage for $84,000 and the note and mortgage was recorded on December 1, 1998 on the Bridgeport Land Records. The mortgage was assigned by Northeast Mortgage to INMC Mortgage Holdings on the same date, November 24, 1998 and recorded on the Bridgeport Land Records on December 1, 1998.

According to the Bank of New York's October 16, 2000 complaint after Northeast assigned the note and mortgage to INMC Mortgage (IndyMac), the same company, IndyMac, assigned the note and mortgage back to Northeast Mortgage, LLC "by assignment of mortgage to be recorded on the Bridgeport Land Records."

Thereafter, according to the complaint The "Note and Mortgage Deed were assigned by Northeast Mortgage Corp., LLC to the Bank of New York, Trustee by Assignment of Mortgage dated November 8, 1999, recorded on November 8, 1999 in volume 4235, page 186 of the Bridgeport Land Records."

Louis Roman, who eventually became a respondent to the lawsuit when his then wife assigned her 50% interest to him says "baloney." He says the note and mortgage was never assigned to Bank of New York. "It's all a fraud," he says.

Here's what Roman claims happened in interviews with *The Black Star News* and in numerous court documents filed over the years.

He agrees with BNY that his now ex-wife executed the mortgage with Northeast Mortgage on November 24, 1998 and that it was recorded on December 1, 1998 on the Bridgeport Land Records. He agrees that Northeast Mortgage assigned the note and mortgage to IndyMac on November 24, 1998 and that it was recorded on the Bridgeport Land Records on December 1, 1998.

From that point onwards is where Roman's account departs from Bank of New York's.

In legal documents, one of Diane Roman's former attorneys, Michael J. Leventhal states that he secured a signed affidavit dated September 24, 2001, a copy of which has been reviewed by *The Black Star News*, from Scott Husted, First Vice President at IndyMac, stating that the note and mortgage was assigned to Donaldson, Lukfin & Jenrette in 1999.

"You tell me, how can the same note and mortgage be assigned to two different entities? Who really believes that IndyMac would assign the note and mortgage back to Northeast?" Roman says.

There's more to this saga.

Documents in support of the Bank of New York's successful summary judgment motion in October 2000, include papers confirming that IndyMac assigned the note and mortgage to Northeast and it's signed by a person identified as Ms. Rosa Salgado an Assistant Vice President at IndyMac.

Leventhal, the lawyer, also obtained an affidavit dated September 24, 2001, a copy of which has also been reviewed by *The Black Star News*, from Judith Leclerc, who was the personnel director at IndyMac, stating that the person who signed off on the purported mortgage assignment and who was identified as Ms. Rosa Salgado, "was neither an employee nor an officer at IndyMac."

What's more, the same person identified as Ms. Rosa Salgado also signed another document, an affidavit in support of BONY's October 2000 motion for summary judgment in which she identified herself as an Assistant Vice President at Washington Mutual, the servicer on the note and mortgage, in which she confirmed that Diane Roman had defaulted on the loan.

Leventhal didn't respond to an e-mail message from *The Black Star News* seeking comment.

Both of the documents -- the one where Ms. Salgado is identified as AVP at IndyMac and the one where she's AVP at Washington mutual-- were notarized by Erika Herrera, a California notary whose license had expired.

"So now you see the kind of fraud I've been dealing with. All I need is a trial so all the facts can come out," Roman says.

"In addition to the fraudulent papers from Rosa Salgado, up to this day there is no recording in the Bridgeport Land Records of the purported assignment of the note and mortgage from IndyMac to Northeast Mortgage because there never was such an assignment," he says.

In an auto-response to an e-mail message seeking comment Richard Liebert the lawyer for BNY says he's out of the office until September 22; the auto-answer provided a list of other attorneys with the firm as contacts. *The Black Star News* didn't receive a response from two of the attorneys Ben Staskiewicz and Richard Jacobson.

Roman claims even though he knew that BNY's purported note and mortgage was "fraudulent" he tried to pay off the debt twice in 2006 and 2008 because the stress of fighting the case was taking its toll on him and Diane. On both occasions the bank refused his payment, he said. It was only in 2010 that he found out why the bank refused the money; the note had already been discharged in a 2004 chapter 7 bankruptcy filing by his wife who had never received the paperwork at the time. "The Bank's lawyers knew it would have been a felony to accept the money on a discharged note," Roman says. "But by foreclosing on the property they will be collecting on a discharged debt."

*The Black Star News* contacted the Bank of New York to inquire about the affidavits from IndyMac officials that the note and mortgage had been assigned to Donaldson, Lukfin & Jenrette and that Ms. Salgado had never worked for the company. BNY spokesperson Kevin Heine issued the following statement: "As trustee, we have no powers or duties with respect to the foreclosure, maintenance, sale or disposition of properties. Those powers and duties fall exclusively to the servicer. So while foreclosure action related to properties held in the trust must be brought in the trustee's name, as they have been in this particular case, the foreclosure activity itself is coordinated, litigated and managed entirely by the servicer."

*The Black Star News* in a follow-up message inquired whether the servicer, which in this case is JP Morgan Chase, took instructions from Anthony Mancuso BNY's president of fixed assets and also to relay Roman's claim that since the bank never was assigned the mortgage any foreclosure would amount to "theft."

Heine declined further comment and referred BSN to JP Morgan Chase.

Roman says in all the 15 years he's "stood up to Bank of New York," the closest the case ever got to trial was when he appeared for a status conference on March 3, 2014 before Barbara N. Bellis, a Superior Court judge in the District of Fairfield, CT..

A transcript of that status conference shows that the judge was not prepared to grant BNY's motion for strict foreclosure because she felt Roman had raised several issues of fact. Judge Bellis said she would refer the case for trial. After a second status conference on March 13, 2014 the judge granted BNY's motion for strict foreclosure.

The transcript shows that Roman testified about his allegations that BNY was using fraudulent documents. The bank had also filed a successful motion to bar him from filing any more appeals.

Judge Bellis didn't return a phone message through her secretary and didn't respond to an e-mail message with detailed questions inquiring as to why she changed her mind about a trial.

Similarly, when contacted by *The Black Star News* and sent questions about Roman's allegations of fraud and forgery on the documents used for the purported assignment of the property, a spokesperson for JP Morgan Chase the servicer sidestepped the questions. Jason Lobo, vice president for external communications at the bank, said, "we cannot comment on pending litigation."

In a May 11, 2015 ruling Judge Trial Referee Alfred J. Jennings, Jr., of Superior Court granted strict foreclosure, acknowledged the chapter 7 discharge but wrote that the bank wouldn't be entitled to recover any debts beyond 2004. With regard to the existing federal tax lien on the property Judge Jennings said it "would not be an impediment to the vesting of title by strict foreclosure..." The judge said any further appeals by the defendant would be a stalling tactic.

Judge Jennings never addressed Roman's allegations and evidence of fraud and forgery with respect to the Salgado documents used by BNY for its successful summary judgment motion in 2000 or the affidavit from the IndyMac VP stating that the note and mortgage had been assigned to Donaldson, Lukfin & Jenrette -- not from IndyMac to Northeast which then assigned it to BNY as the bank contends.

"I'm not surprised that Bank of New York and JP Morgan Chase didn't address the fraud issue," Roman says. "They know there is going to be liability down the line. All I need is for a single judge to grant me a trial."

**Contact** mallimadi@gmail.com